

# In the
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

_____

No. 06-22-00104-CR
_____

SHANNON BRYAN QUINN, Appellant

V.

THE STATE OF TEXAS, Appellee

On Appeal from the 8th District Court
Hopkins County, Texas
Trial Court No. 2229224

Before Stevens, C.J., van Cleef and Rambin, JJ.
Memorandum Opinion by Chief Justice Stevens

## MEMORANDUM OPINION

A Hopkins County jury convicted Shannon Bryan Quinn of sexual assault of a child.[1] The trial court sentenced Quinn to forty years' incarceration. Quinn appeals, alleging (1) that the trial court did not conduct the required analysis before admitting extraneous-offense evidence and that the probative value of that evidence was substantially outweighed by the danger of unfair prejudice, (2) that the trial court erred to allow extraneous-offense evidence to correct a false impression created by statements Quinn made during voir dire, and (3) that the State made improper closing arguments. Because he failed to preserve these complaints, we overrule Quinn's points of error and affirm the trial court's judgment.

## I.      Background and Extraneous-Offense Evidence

The complainant, Hollie,[2] testified that Quinn lived with her family. Hollie described several occasions where Quinn touched her inappropriately. Hollie, who was fifteen years old at the time of trial, said the first abuse occurred when she was about seven years old. One night, Quinn came into Hollie's room and touched her vaginal area, over her clothes. On other occasions, he put his mouth on her breasts. Those incidents happened "[a] lot" over the next few years. Once, when she was eleven years old, Quinn "bent [her] over the ottoman" and "put his penis in [her] [bottom]." She also testified that once, when she was thirteen, Quinn followed her

---

[1]*See* TEX. PENAL CODE ANN. § 22.011(f)(1)(B) (Supp.).

[2]To protect their privacy, we use pseudonyms when we refer to the victim and anyone referenced who was a minor at the time the offense was committed. *See* TEX. R. APP. P. 9.10(a)(3); *McClendon v. State*, 643 S.W.2d 936, 936 n.1 (Tex. Crim. App. [Panel Op.] 1982).

into a room that served as a kind of pantry, kissed her neck,[3] and grabbed her "boobs." Her mother walked in on that scene and yelled at Quinn,[4] and his abuse stopped for a while.

The final act Hollie described happened after the incident in the pantry but before Quinn was indicted. One day, Quinn pulled Hollie into a room, locked the door, put a condom on his penis, and had vaginal sex with her. He held her down and choked her until she passed out. During the assault, she felt tearing in her vaginal area. When she escaped from Quinn, she noticed blood coming from her vagina.

Hollie's younger sister Evelyn, who had finished third grade just before the trial, testified about "bad things" Quinn did to Hollie. Evelyn testified that, when she got home from school, Quinn frequently told Evelyn to take a bath. While bathing, Evelyn said that she heard Hollie tell Quinn to "stop it" and heard Hollie moaning. Evelyn said that that happened "every day." She described the moaning as a bad sound, and she explained that she knew "sounds that are good and sounds that are bad." She described one occasion when she saw Quinn sitting next to Hollie on the couch "doing a weird motion on [Hollie's] upper chest." Although Evelyn did not specify if Quinn was touching over or under Hollie's shirt, she did say that she could see Hollie's chest and that Quinn was making a "weird motion with his hands." She frequently saw Quinn kiss Hollie "in a weird way," "like the French kiss." Finally, Evelyn said that Quinn showered separately with both girls. Though he never touched her, she described Quinn as being naked and stated that "his lower body part . . . [got] longer." She called Quinn's body part "[a] long

---

[3]She described the kissing as "like French kissing but on [her] neck."

[4]Hollie's mother testified that she had seen nothing inappropriate when she walked in on that scene. Rather, she yelled at Quinn about an application on his cell phone that deleted text messages. When Hollie's younger sister Evelyn told their mother about concerning things that she had heard when Quinn was alone with Hollie, Evelyn said that their mother did not believe her because "[t]wo beats one" and because Quinn and Hollie, at the time, both denied that inappropriate acts had occurred.

stick." She saw Quinn's body as she left the shower and Hollie entered for her shower with Quinn.

The State also presented two witnesses who described incidents with Quinn when they were young girls. Rachel, who was five or six at the time, described an occasion when Quinn exposed his penis to her and asked her to apply some ointment, which she refused to do. Another woman, Brenda, testified that, when she was a young girl, and while sleeping with her aunt, Quinn got into the bed next to Brenda and touched her vagina, then her "butt," under her clothes. Brenda also described an occasion at a lake when Quinn "pulled [her] close to him, and it felt like his penis was out of his swim trunks." "It felt like it was erect," she added.

## II. Admission of Extraneous-Offense Evidence

Quinn's first point of error complains that, at the Article 38.37 hearing held before the trial started, the "trial court did not conduct the required analysis" for admission of extraneous-offense evidence under Rule 403 of the Texas Rules of Evidence.[5,6]

In certain criminal prosecutions, including for sexual assault of a child, the Texas Code of Criminal Procedure allows for the admission of evidence that the defendant has previously

___

[5]*See* TEX. R. EVID. 403.

[6]We read part of Quinn's briefing to complain about the way the trial court conducted the Article 38.37, Section 2, hearing—a hearing regarding admission of extraneous-offense evidence regarding other child victims. The trial court pointed out that nothing in Article 38.37, Section 2-a, required live testimony and invited Quinn to provide such authority. The trial court stated, "I've done it both ways. We've had it where the person comes and we have kind of a minitrial or we have a proffer." The trial court then referred to *Gutierrez v. State*, No. 01-19-00718-CR, 2021 WL 2931358 (Tex. App.—Houston [1st Dist.] July 13, 2021, pet. ref'd) (mem. op., not designated for publication), which supported the trial court's finding that Article 38.37, Section 2-a, makes no requirement of the forms of evidence to be considered. We need not address whether a proffer of expected testimony is sufficient to satisfy Article 38.37, Section 2-a, because Quinn has not briefed that issue. To the extent Quinn complains of the trial court's handling of the Article 38.37, Section 2-a, hearing, we find no abuse of discretion. *See State v. Hill*, 499 S.W.3d 853, 865 (Tex. Crim. App. 2016) ("An abuse of discretion does not occur unless the trial court acts 'arbitrarily or unreasonably' or 'without reference to any guiding rules and principles.'") (quoting *Montgomery v. State*, 810 S.W.2d 372, 380 (Tex. Crim. App. 1990)).

committed various enumerated offenses, including, but not limited to, sexual assault of a child and indecency with a child. *See* TEX. CODE CRIM. PROC. ANN. art. 38.37, § 2(b) (Supp.). Such evidence may be admitted for "any bearing the evidence has on relevant matters, including the character of the defendant and acts performed in conformity with the character of the defendant." *Id.* Assuming the proffered evidence is relevant, it may nonetheless be excluded "if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, or needlessly presenting cumulative evidence." TEX. R. EVID. 403; *see Mozon v. State*, 991 S.W.2d 841, 846 (Tex. Crim. App. 1999) ("[W]hile evidence may be admissible under Rule 404 the trial court may nevertheless exclude the same evidence if it determines, within its discretion, that the probative value of such evidence is substantially outweighed by its unfair prejudice.").

On appeal, Quinn contends that, notwithstanding the expanded admissibility of extraneous-offense evidence allowed by Article 38.37, Section 2, the trial court erred by not conducting the analysis required by Rule 403 of the Texas Rules of Evidence, and the trial court should have found that the prejudicial nature of the extraneous-offense evidence substantially outweighed its probative value. *See* TEX. R. EVID. 403. Because Quinn did not make these arguments to the trial court, he has not preserved them for our review.

To preserve a complaint for our review, a party must first present to the trial court a timely request, objection, or motion stating the specific grounds for the desired ruling if not apparent from the context. TEX. R. APP. P. 33.1(a)(1). Further, the trial court must have ruled on the request, objection, or motion, either expressly or implicitly, or the complaining party must have objected to the trial court's refusal to rule. TEX. R. APP. P. 33.1(a)(2). At trial, Quinn made

5

no Rule 403 objections when the State proffered testimony about extraneous bad conduct from witnesses other than the complainant. "When evidence of a defendant's extraneous acts is relevant under Article 38.37, the trial court still is required to conduct a Rule 403 balancing test upon proper objection or request." *Distefano v. State*, 532 S.W.3d 25, 31 (Tex. App.—Houston [14th Dist.] 2016, pet. ref'd) (citing *Belcher v. State*, 474 S.W.3d 840, 847 (Tex. App.—Tyler 2015, no pet.)).

Because Quinn made no objection under Rule 403, his appellate complaints have not been preserved for our review. As a result, we overrule Quinn's first point of error. *See Belcher v. State*, 474 S.W.3d 840, 847 (Tex. App.—Tyler 2015, no pet.).

### III. Quinn Did Not Preserve His Complaint About Rebuttal of False Impression

In his next point of error, Quinn complains that the State used the extraneous-offense evidence to rebut the false impression the State claimed Quinn left with the jury in his opening argument. Because Quinn did not complain about this use of the evidence to the trial court, the argument is not preserved for our review.

In his opening statement to the jury, Quinn's counsel made the following statement:

> And I think when you hear the evidence, you're going to find that [Hollie's] original report of that was that it was more of a blowfish-type kiss. It wasn't anything like a French kiss, I think is what she said.
>
> You're going to find that [Evelyn] thinks -- you're going to hear testimony, I think, that [Evelyn] thinks there was some kind of contact being done on a couch.
>
> I think you're going to hear, at least from what I've seen, [Hollie] say that the [sic] nothing inappropriate happened there.[7]

---

[7]In its opening statement, the State told the jury that it would hear evidence that Quinn "came behind [Hollie], started kissing her."

At the bench, the State told the trial court that it believed the above statement implied to the jury that, "if [Quinn] did anything, it wasn't intentional, it was just a harmless kiss on the neck." The State argued that it was entitled to offer extraneous-offense evidence to rebut the impression left by Quinn's opening statement regarding Quinn's intent when he kissed Hollie. On appeal, Quinn argues that the only permissible method of rebutting an alleged false impression is through cross-examination.

First, we point out that Quinn did not contest the State's argument. After a brief discussion, the trial court said, "I think [the State] can proffer evidence to rebut what was stated in opening argument." Quinn made no response. Second, while Quinn argues in his appellate brief that a false impression may only be rebutted by cross-examination,[8] he did not make that argument to the trial court. To preserve a complaint for our review, a party must first present to the trial court a timely request, objection, or motion stating the specific grounds for the desired ruling if not apparent from the context. TEX. R. APP. P. 33.1(a)(1). Further, the trial court must have ruled on the request, objection, or motion, either expressly or implicitly, or the complaining party must have objected to the trial court's refusal to rule. TEX. R. APP. P. 33.1(a)(2).

For these reasons, we find that Quinn did not preserve his complaint for our review.[9] As a result, we overrule Quinn's second point of error.

---

[8]*See Wheeler v. State*, 67 S.W.3d 879, 885 (Tex. Crim. App. 2002).

[9]Quinn claims that the trial court and the State "assumed a defensive objection" to the extraneous-offense evidence the State said it would introduce to rebut the false impression made by Quinn's voir dire. We do not find that the record establishes such an understanding or "makes clear that the trial court understood an objection and its legal basis." *Taylor v. State*, 939 S.W.2d 148, 155 (Tex. Crim. App. 1996). Here, after the State explained its theory of admissibility, Quinn replied, "I think that's what I expect the evidence is going to show, Judge. . . . The evidence is going to be what it's going to be." Nothing in the exchange between the trial court, Quinn, and the State suggested a defensive objection to the State's intent to present extraneous-offense evidence to rebut Quinn's voir dire statement. Further, at no point did Quinn request any kind of limiting instruction regarding the State's proffered evidence.

## IV. Quinn Failed to Preserve His Complaint About the State's Closing Arguments[10]

Quinn's final point of error complains of statements made by the State in its closing argument. The State waived its closing argument, and Quinn then presented his. The State then made its rebuttal closing argument. There, the State responded to arguments Quinn had made. On appeal, Quinn complains of some of the State's comments made in its rebuttal closing.[11] At trial, however, Quinn lodged no objection to any of those statements. Failure to object to argument waives the complaint for appellate review. *See Euziere v. State*, 648 S.W.2d 700, 703 (Tex. Crim. App. 1983) ("The general rule is that any impropriety in the prosecutor's argument to the jury is waived by a defendant's failure to make a proper, clear, and timely objection.").

Because we find that Quinn's complaint is not preserved, we overrule Quinn's third point of error.

## V. Conclusion

We affirm the trial court's judgment.

Scott E. Stevens
Chief Justice

Date Submitted:      January 5, 2023
Date Decided:        March 7, 2023

Do Not Publish

---

[10]Quinn titles his third point of error as follows: "The trial court's error in permitting three additional children to testify that Appellant sexually abused them was harmful, particularly in light of the State's heavy emphasis on the extraneous conduct." The text of his brief, though, complains of statements made by the State in closing arguments. To the extent Quinn's briefing complains of the prejudicial nature of the evidence over its probative value, he has not preserved that argument for our review.

[11]Quinn's brief complains that the State's argument (1) referred to Evelyn's description of seeing Quinn's "long stick" "getting longer" when he was with her in the shower, (2) referred to Quinn's argument where he said that the State brought extraneous-offense testimony because it needed "to bolster" Hollie's testimony, and (3) described Quinn as "a hunter" who would "hunt down someone to abuse" and who had "done it for years."